**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| _____ ) | |
| MICHAEL SAUNDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  12-cv-09158 |
| ) | |
| CITY OF CHICAGO, ET AL., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |
| _____ ) | |
| VINCENT THAMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  12-cv-09170 |
| ) | |
| CITY OF CHICAGO, ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| HAROLD RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.:  12-cv-09184 |
| ) | |
| CITY OF CHICAGO, ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OPINION AND ORDER**

On November 15, 2012, Plaintiff Michael Saunders ("Saunders") filed an eleven-count

complaint [1] against the City of Chicago ("the City"); Chicago Police Detectives Kenneth

Boudreau, James Cassidy, Thomas Coughlin, William Foley, Pat McCafferty, Richard Paladino,

and Frank Valadez, Chicago Police Sergeant L. Tudier, and Chicago Police Youth Officer

Charles Bowen ("Youth Officer Bowen") (collectively, "Defendant Officers"); Cook County Assistant State's Attorneys Fabio Valentini ("ASA Valentini") and Terence Johnson ("ASA Johnson") (together, "ASA Defendants"); Cook County, Illinois ("Cook County"); and as-yet Unknown Current or Former City of Chicago Employees. On March 1, 2013, ASA Valentini moved to dismiss [51] the complaint in its entirety. On March 12, 2013, Defendant Officers and the City (together, "the City Defendants") jointly moved to dismiss [60] the complaint in its entirety. On April 1, 2013, ASA Johnson moved to dismiss [71] the complaint in its entirety. Although Cook County filed a motion to dismiss [49], the motion was withdrawn as moot when the Court ordered [69] that Cook County remain in the case solely as a necessary party with respect to its obligation as an indemnitor. For the reasons set forth below, the Court grants in part Defendants' motions to dismiss [51, 60, and 71] Saunders' Complaint.

On November 15, 2012, Plaintiff Vincent Thames ("Thames") filed a ten-count complaint [1] against the City, Defendant Officers (except Youth Officer Bowen), and as-yet Unknown City of Chicago Employees. On November 20, 2012, Thames filed a first amended complaint [5], adding Cook County and ASA Johnson as defendants. On March 12, 2013, Defendant Officers and the City jointly moved to dismiss [35] the first amended complaint in its entirety. On April 1, 2013, ASA Johnson moved to dismiss [43] the first amended complaint in its entirety. Although Cook County filed a motion to dismiss [28], the motion was withdrawn as moot when the Court ordered [41] that Cook County remain in the case solely as a necessary party with respect to its obligation as an indemnitor. For the reasons set forth below, the Court grants in part Defendants' motions to dismiss [35 and 43] Thames' Complaint.

On November 15, 2012, Plaintiff Harold Richardson filed an eleven-count complaint [1] against the City, Defendant Officers (except Youth Officer Bowen), and as-yet Unknown

Current or Former City of Chicago Employees. On March 12, 2013, Defendant Officers and the City jointly moved to dismiss [44] the complaint in its entirety. For the reasons set forth below, the Court grants in part Defendants' motion to dismiss [44] Richardson's Complaint.

## I.      Background[1]

On November 7, 1994, Nina Glover was found strangled to death in a dumpster at 1400 West Garfield Boulevard, Chicago, Illinois.   Defendant Cassidy and other members of the Chicago Police Department assigned to investigate the murder arrived at the crime scene and spoke with four individuals: the garbage truck driver who found the body, an employee of the store at which the dumpster was located, a neighborhood resident, and a man named Johnny Douglas, who had no discernible reason for being there.  The complaints allege that on March 7, 1995, with their investigation at a standstill, Defendant Officers arrested then-eighteen-year-old Jerry Fincher and interrogated him about the murder for two days.  By threatening Fincher with violence and feeding him details of the crime, Defendant Officers unlawfully coerced Fincher into giving a false statement to Assistant State's Attorney Terrence Johnson, which implicated Plaintiffs Saunders, Richardson, and Thames.

On March 9, 1995, Defendant Officers arrested, interrogated, and improperly coerced – by threatening him with life imprisonment if he failed to confess – then-eighteen-year-old Thames into giving a false confession in a recorded statement.  ASA Johnson participated in Thames' interrogation, coordinated with Defendant Officers to ensure that those involved in the interrogation of Thames were apprised of the details stemming from the interrogation of Fincher, and drafted Thames' confession statement.   That same day, Defendant Officers separately

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint.  See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

arrested and interrogated then-sixteen-year-old Richardson, as well as a boy named Terrill Swift. After hours of improper coercion and false promises of leniency, Defendant Officers secured a false confession from Richardson, which implicated Saunders and Thames. Defendant Officers also improperly coerced Swift to confess and falsely implicate Saunders, Thames, and Richardson. Finally, Defendant Officers arrested and interrogated then-fifteen-year-old Plaintiff Saunders. By ripping an earring from his ear and threatening to shoot him on the railroad tracks behind the police station, Defendant Officers secured a false confession from Saunders, implicating himself and the other boys, that was written entirely by Assistant State's Attorney Fabio Valentini.

Although no physical evidence linked the Plaintiffs to the crimes against Nina Glover, Richardson and Saunders were convicted after bench trials that commenced in November 1997 of rape and murder on the basis of their confessions. Each was sentenced to 40 years in prison. Terrill Swift was also convicted at a bench trial and was sentenced to 36 years. In light of those outcomes, Plaintiff Thames pleaded guilty and was sentenced to 30 years in prison in February 1998. Jerry Fincher's confession was deemed illegal and excluded at a suppression hearing, and prosecutors dropped the charges against him.

Plaintiffs allege that, to substantiate their untrue confessions, Defendant Officers falsified written reports, fabricated circumstantial physical evidence (including a shovel and a mop, which Officers claimed were used by the boys to commit and then clean up the crime), and withheld exculpatory statements and other evidence. Plaintiffs allege that the Defendant Officers' misconduct represents a pattern of behavior within the Chicago Police Department that was both condoned and facilitated by the Department's supervisors.

Pursuant to a motion for post-conviction DNA testing jointly filed on February 24, 2011 by Plaintiffs Richardson and Saunders, as well as Terrill Swift, Cellmark Laboratories in Dallas, Texas determined that only one person left DNA inside the victim. On May 13, 2011, the Illinois State Police, using the Combined DNA Index System (CODIS) database, linked the DNA to convicted felon Johnny Douglas – whom Defendant Officers had met, but failed to subsequently investigate, at the crime scene on November 7, 1994. On November 16, 2011, the Circuit Court of Cook County granted Plaintiffs' joint petition to vacate their convictions, and the State of Illinois granted certificates of innocence to Plaintiffs on September 14, 2012, after Plaintiffs spent more than sixteen years in prison.

On November 15 2012, Plaintiffs Saunders, Thames, and Richardson each filed a complaint in this case [1]. On November 20, 2012, Thames filed a first amended complaint [5]. Each complaint is eleven counts and names the City, seven Chicago police officers, and as-yet unknown city of Chicago employees as defendants. Saunders' complaint also names Youth Officer Bowen, ASAs Johnson and Valentini, and Cook County as defendants. Thames' complaint adds ASA Johnson and Cook County only. Count I of the complaints alleges violations under 42 U.S.C. § 1983 against Defendant Officers and Assistant State's Attorneys for forced self-incrimination stemming from Plaintiffs' coerced false confessions pursuant to the Fifth and Fourteenth Amendments. Count II alleges violations under § 1983 against Defendant Officers and Assistant State's Attorneys for both violating Plaintiffs' due process right to a fair trial by coercing their confessions and fabricating false reports and other physical evidence, and their due process rights pursuant to *Brady v. Maryland* by deliberately withholding material exculpatory and impeachment evidence. Count III alleges violations under § 1983 against Defendant Officers and Assistant State's Attorneys for failure to intervene to prevent the

violation of Plaintiffs' constitutional rights. Count IV alleges violations under § 1983 against Defendant Officers and Assistant State's Attorneys for conspiracy to deprive constitutional rights, including Plaintiffs' rights to due process and a fair trial. Count V alleges violations under § 1983 against Detective Cassidy and Sergeant Tudier for supervisory liability for failure to adequately train and supervise the other defendant officers. Count VI alleges a *Monell* claim under § 1983 against the City for policies, practices and/or customs pursuant to which Defendant Officers acted when, among other things, employing improper interrogation tactics, filing false reports, and failing to supervise and discipline subordinates engaged in wrongful behavior that deprived Plaintiffs of constitutional rights. Count VII alleges a state law claim for malicious prosecution against Defendant Officers, because Defendant Officers' subjected Plaintiffs to judicial proceedings for which there was no probable cause, as well as fabricated and withheld evidence. Count VIII alleges a state law claim for intentional infliction of emotional distress against Defendant Officers and Assistant State's Attorneys. Count IX alleges a state law claim for civil conspiracy against Defendant Officers and Assistant State's Attorneys. Count X alleges a state law claim against the City for respondeat superior. Count XI is an indemnification claim against the City and Cook County pursuant to 745 ILCS 10/9-102.

## II.    Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of the way the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III.  Analysis

Defendants seek dismissal of Plaintiffs' complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Regarding Count I, the City, Defendant Officers, and ASA Defendants, argue (i) that Plaintiffs' Fifth Amendment self-incrimination claims are time-barred as a matter of law and (ii) that Thames fails to state a Fifth Amendment self-incrimination claim, even if his claim is not time-barred.  Regarding Counts II-XI, all Defendants argue that Plaintiffs fail to state claims for which relief may be granted.  The ASA Defendants argue that absolute and qualified immunity shields them from liability as to all claims and that sovereign immunity provides them additional protection from Plaintiffs' state law claims.

### A.  Statute of Limitations for Fifth Amendment Claims

The Seventh Circuit recently has been very clear in its assessment of limitations periods: "[O]n the subject of the statute of limitations * * * * [w]hat a complaint must plead is enough to show that the claim for relief is plausible.  Complaints need not anticipate defenses and attempt to defeat them.  The period of limitations is an affirmative defense * * * * We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for

motions under Rule 8(c)(1)." *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012) (internal citations omitted); see also *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003); *United States v. Northern Trust Co.*, 372 F.3d 886 (7th Cir. 2004); *Xechem, Inc. v. Bristol—Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004). In *Mitcheff*, the Court concluded by reminding district judges to "respect the norm that complaints need not anticipate or meet potential affirmative defenses."

Despite these admonitions, the Seventh Circuit also has consistently reaffirmed that a plaintiff may plead himself out of court by alleging facts that are sufficient to establish a statute-of-limitations defense. See *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissal is appropriate where it is "clear from the face of the amended complaint that it [was] hopelessly time-barred"); *Andonissamy v. Hewlett–Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008) (stating that "[a] statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (internal quotations omitted); *U.S. Gypsum Co*, 350 F.3d at 626 ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense"); *Xechem, Inc.*, 372 F.3d at 899 ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); see also *Baldwin v. Metro. Water Reclamation Dist. Of Greater Chicago*, 2012 WL 5278614, at *1 (N.D. Ill. Oct. 26, 2012) ("A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings * * * .") (quoting *Mitcheff*, 696 F.3d at 637). Where a plaintiff has pleaded facts which arguably establish

an affirmative defense and both sides have briefed the issue, practical considerations—such as discovery costs, attorneys fees, and judicial efficiency—provide courts with ample reasons to resolve a dispositive point of law early in a case, whether the parties have briefed the question as a 12(b)(6) or a 12(c) issue. In either case, a court's decision rests on the pleadings and whether a plaintiff has affirmatively pleaded himself out of court.

In the present case, Plaintiff has pleaded all of the necessary facts to resolve this issue, leaving the Court to consider a dispositive point of law. Here, the Court must determine when a violation of the Fifth Amendment's self-incrimination protection occurs and when that claim accrues. Plaintiffs allege that their Fifth Amendment right to be free from compelled self-incrimination was violated when Defendants forced them to confess and then used the confessions to Plaintiffs' detriment in criminal prosecutions. The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Regarding statements compelled by police interrogations, the Supreme Court has said that "it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003). The Seventh Circuit has held that a "criminal case" has begun when a criminal prosecution is not only initiated, but is commenced *because* of a confession, and that a defendant is compelled to be witness against himself in violation of the Fifth Amendment when his unlawful confession is introduced at a pre-trial proceeding. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026-27 (7th Cir. 2006). Accordingly, Plaintiffs Saunders, Thames, and Richardson's self-incrimination rights were violated the first time that their confessions were introduced in a courtroom proceeding. For Saunders and Richardson, their Fifth Amendment violations occurred as late as their trials in November 1997 and as early as the first pre-trial hearing where their confessions were

introduced. For Thames, who pleaded guilty in February 1998, it is unclear from his complaint whether his confession was ever introduced in a courtroom proceeding, such that he was compelled to be a witness against himself. As discussed below, however, this issue is moot as to Thames as well.

Defendants argue that *Wallace v. Kato*, 549 U.S. 384 (2007), instructs that Plaintiffs' Fifth Amendment claims accrued when their self-incrimination violations occurred and that their claims expired two years later, pursuant to Illinois' statute of limitations for such claims. Plaintiffs contend that *Heck v. Humphrey*, 512 U.S. 477 (1994), dictates that their Fifth Amendment claims did not accrue until the convictions were vacated, since the claims imply the invalidity of their convictions. As discussed below, courts in this district have not taken a uniform approach to the accrual of Fifth Amendment claims alleging violations of the right against self-incrimination. However, just last month, in *Franklin v. Burr*, --- Fed. Appx. ---, 2013 WL 5738891 (7th Cir. Oct. 23, 2013), the Seventh Circuit addressed the issue. Although the disposition is non-precedential (see Fed. R. App. P. 32.1; 7th Cir. R. 32.1), this Court finds the court of appeals' analysis in *Franklin* persuasive and consistent with both Supreme Court precedent and the on-point holding of the Eighth Circuit cited in *Franklin*.

In *Franklin*, the plaintiff filed a Section 1983 action contending that the defendants – police officers and a state prosecutor – violated his Fifth Amendment right against self-incrimination when they interrogated him after he requested counsel. *Franklin*, 2013 WL 5738891, at *1. The district court originally dismissed the lawsuit as *Heck*-barred and in denying a motion for reconsideration concluded that if *Heck* did not bar the suit, it was subject to dismissal as untimely. *Id*. On appeal, the Seventh Circuit "agree[d] with the second of these conclusions," and thus affirmed. *Id*.

In so holding, the court of appeals observed that the district court "thought that Franklin's claim that interrogation occurred without counsel, if accepted, would be incompatible with the validity of [his] convictions," and thus barred by *Heck*. *Franklin*, 2013 WL 5738891, at *1. But, the court explained, "the convictions rest on Franklin's guilty plea, not on the admissibility of any particular evidence." *Id*. The court then cited the Supreme Court's decision in *Wallace* for the proposition that "a claim contending that arresting officers violated the Fourth Amendment accrues at the time of the arrest, not when a conviction is set aside, because the remedy of suppression under the exclusionary rule does not necessarily prevent a valid conviction" and further noted that "a motion to suppress evidence may be denied even when a violation of the Constitution occurred," for "the exclusionary rule is not conterminous with the substance of the Bill of Rights." *Id*. Significantly, the court also stated "[t]hat is equally true of a contention that a confession is invalid" (*id*.), citing the Eighth Circuit's holding in *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996), that a "coerced-confession claim is not barred by *Heck*."[2] *Franklin*, 2013 WL 5738891, at *1. In sum, the court of appeals found "no necessary inconsistency between the propositions that (a) a conviction based on a guilty plea is valid, and (b) the police violated the accused's rights at the time of arrest or interrogation." *Id*. And, based on that reasoning, the court held that Franklin's Fifth Amendment claim, filed in 2012, "is not barred by *Heck*," "accrued in 1996," and was properly dismissed as "untimely." *Id*. at *2.

In view of *Franklin, Simmons,* and of course *Wallace*, this Court does not find *Heck* to be controlling in the coerced confession context. In *Heck*, the plaintiff brought a § 1983 claim against police and prosecutors, alleging that his rights were violated from an unlawful

---

[2] In *Simmons*, the Eighth Circuit reasoned that "'the evidentiary impact of an involuntary confession, and its effect upon the composition of the record, is indistinguishable from that . . . of evidence seized in violation of the Fourth Amendment.'" 77 F.3d at 1095 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)).

investigation that led to his arrest, the destruction of exculpatory evidence, and actions that caused the use of an "illegal and unlawful voice identification" procedure at trial. 512 U.S. at 479. The Supreme Court analogized the plaintiff's claims to the common law cause of action for malicious prosecution – an element of which is a favorable termination of the criminal proceeding – and ruled that the plaintiff could not bring his § 1983 action attacking the validity of his outstanding criminal judgment. *Id.* at 484-86. The Supreme Court held that § 1983 claims that, like claims for malicious prosecution, "necessarily imply the invalidity of [a] conviction" do not accrue (and cannot be brought) until the conviction is declared invalid. *Id.* at 486-87, 489-90.

The Supreme Court was "careful in *Heck* to stress the importance of the term 'necessarily.' For instance, [the Court] acknowledged that an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not *necessarily* imply that the plaintiff's conviction was unlawful." *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). "To hold otherwise would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination – suits that could otherwise have gone forward had the plaintiff not been convicted." *Id.*

Even prior to *Franklin*, the Seventh Circuit had declined to apply the *Heck* ruling in the false confession context both times that it considered the issue, because claims attacking a false confession do not *necessarily* imply the invalidity of a conviction. See *Wallace v. City of Chicago*, 440 F.3d 421, 426 (7th Cir. 2006); see also *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996). In *Booker*, the Illinois Appellate Court's post-conviction determination that Booker's confession was a product of an unlawful arrest prompted prosecutors to dismiss the charges

against the defendant on remand. *Booker*, 94 F.3d at 1054. Nevertheless, the Seventh Circuit found that his § 1983 claim had not been barred by *Heck*, because there was nothing "necessary or inevitable about that result." *Id.* His claim therefore accrued when it occurred, rather than when his conviction was invalidated, *id.* at 1056, and his claim was time-barred by the two-year statute of limitations. *Id.* at 1057.

In *Wallace*, a plaintiff brought a § 1983 action after his conviction was invalidated, alleging that police violated his Fourth Amendment and due process rights when they coerced him to falsely confess. *Wallace*, 440 F.3d at 423-24. In determining whether the plaintiff's claim was time-barred or, instead, did not accrue (pursuant to *Heck*) until his conviction was invalidated, the Seventh Circuit's analysis focused on the time at which plaintiff's injury occurred. *Id.* at 425. Because a false arrest injury occurs at the time of the arrest itself, the Seventh Circuit noted that some such claims (like Wallace's) may run into tension with *Heck*, since a successful unlawful arrest claim may leave the prosecution without evidence on which to proceed. *Id.* Relying on its prior ruling in *Booker* and pointing to language in *Heck* that anticipated this tension, the Seventh Circuit determined that Wallace's false confession claim was time-barred. *Id.* at 426-27.

In *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court put an exclamation point on the Seventh Circuit's ruling. The Court noted that, in seeking to apply *Heck* and defer the accrual of his claim from the date on which his pre-conviction constitutional violation occurred to the date on which his conviction was invalidated, Wallace sought the "adoption of a principle that goes well beyond *Heck*: that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." *Id.* at 1098. As the Court said:

> [t]he impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to

speculate about whether a prosecution will be brought, whether it will result in a conviction, and whether the pending civil action will impugn that verdict – all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs-what will the trigger be then? We are not disposed to embrace this bizarre extension of *Heck*.

*Id.* Therefore, the Supreme Court held that the statute of limitations on a § 1983 claim of false arrest in violation of the Fourth Amendment begins to run at the time the violation occurs. *Id.* at 1100.

Here, Plaintiffs Saunders, Thames, and Richardson bring their false confession claims as violations of their Fifth Amendment self-incrimination rights, rather than as a product of an unlawful arrest in violation of their Fourth Amendment rights like those brought in *Booker* and *Wallace*. Nevertheless, the Court concludes that the principles set forth in those cases control. The Seventh Circuit made clear in *Wallace* and *Booker* that false confession claims do not *necessarily* impugn the validity of a conviction, even when the confession formed the basis of the prosecution. And *Heck* and *Wallace* instruct that there is a fundamental difference between claims that resemble malicious prosecution (a claim, which the Court notes, Plaintiffs have brought in Count VII of their complaints) and those based on claims that could have been brought prior to a conviction. See *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) (making clear that "*Wallace* holds that a claim that accrues before a criminal conviction may and usually must be filed without regard to the conviction's validity" and that "the prospect that charges will be filed, and a conviction ensue, does not postpone the claim's accrual. *Wallace* added that a conviction does not un-accrue the claim, even if the arguments advanced to show a violation of the fourth amendment also imply the invalidity of the conviction"); see also *Gilbert v. Cook*, 512

F.3d 899, 901 (7th Cir. 2008) (stating that *Wallace v. Kato* holds that *Heck* does not affect litigation about police conduct in the investigation of a crime). Last month's Seventh Circuit decision in *Franklin* further supports the notion that Fifth Amendment claims based on a coerced confession or an interrogation after the defendant's invocation of the right to counsel are not *Heck*-barred. See *Franklin*, 2013 WL 5738891, at *1-*2; see also *Simmons*, 77 F.3d at 1095. In sum, Plaintiffs' Fifth Amendment false confession claims accrued when the confessions first were used against them in a courtroom proceeding and not, as Plaintiffs' urge, when their convictions were set aside.

As alluded to above, the parties have cited a number of other cases in the Northern District of Illinois that have applied *Heck*, rather than *Wallace*, in the false confession context. See, e.g., *Rivera v. Lake County*, --- F. Supp. 2d ---, 2013 WL 5408840 at *4 (N.D. Ill. Sept. 26, 2013); *Tillman v. Burge*, 813 F. Supp. 2d 946, 970-71 (N.D. Ill. 2011); *Wilson v. O'Brien*, No. 07-CV-3994, 2011 WL 759939 at *6 (N.D. Ill. Feb. 25, 2011); *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 956 (N.D. Ill. 2010); *Hill v. City of Chicago*, No. 06-CV-6772, 2009 WL 174994 at *5-6 (N.D. Ill. Jan. 26, 2009). These cases declined to apply *Wallace* to Fifth Amendment self-incrimination claims, either because the Supreme Court's grant of certiorari in *Wallace* was limited to plaintiff's Fourth Amendment false arrest claim, see, e.g., *Wilson*, 2011 WL 759939 at *6, or because the majority of cases in this district (many of which pre-date *Wallace*) did the same. See, e.g., *Tillman*, 813 F. Supp. 2d at 971; see also *Rivera*, 2013 WL 5408840 at *4 (citing *Tillman*). They did not have the benefit of *Franklin*, which clearly spells out why *Wallace*, not *Heck*, controls and specifically why the rationale of *Wallace* applies to false confession claims whether they are brought (nominally) under the Fourth or Fifth Amendment. In both contexts, the constitutional violation occurs (and a claim can be brought) prior to the

conviction, and in either case, the false confession claim will not necessarily impugn the conviction's validity. As the Seventh Circuit said in *Wallace*, "[i]n the end, all [Plaintiff] has is a complaint about the arrest and the subsequent confession, and that is the claim we have found to be time-barred. He cannot escape that result merely by re-characterizing the claim under a different part of the Constitution." *Wallace*, 440 F.3d at 429-430.

The Court is not persuaded that *Rodriguez v. Cook County*, 664 F.3d 627 (7th Cir. 2011), compels the opposite conclusion. Although Plaintiffs are correct that Rodriguez's claim accrued when his conviction was vacated, his claim was based on police officers' coercing witnesses to testify against him, a claim much more akin to malicious prosecution (as in *Heck*) and unrelated to Rodriguez's Fifth Amendment self-incrimination right.

To determine the statute of limitations arising under § 1983, the Court must look to the forum state's statute of limitations for personal injury claims. *Wallace*, 549 U.S. at 387. The statute of limitations for § 1983 actions filed in Illinois is two years pursuant to 735 ILCS § 5/13-202. *Id.* Because Plaintiffs Saunders and Richardson's Fifth Amendment claims accrued, at the latest, at their trials in November 1997, the two-year statute of limitations has long passed and their claims are time-barred. Plaintiff Thames' Fifth Amendment claims accrued, if a constitutional injury occurred at all, at his February 10, 1998 sentencing or at an earlier pre-trial hearing, so any Fifth Amendment claim that he may have is time-barred as well.

**B.      Due Process Fair Trial and *Brady* Claims**

*1.      Due Process Fair Trial Claims*

Plaintiffs allege that their due process right to a fair trial was violated when Defendants fabricated false reports and other evidence, and again when Defendants withheld exculpatory and impeachment evidence related to these fabrications. The City Defendants argue that Plaintiffs

have failed to state a claim for which relief may be granted, insisting that Plaintiffs' allegations of evidence fabrication at best state a claim for malicious prosecution and that any exculpatory information that the Defendants may have withheld does not rise to the level of a *Brady* violation. The Court agrees that Plaintiffs' have not stated a stand-alone federal due process claim stemming from the fabrication of evidence – these allegations make out a state law claim for malicious prosecution – but Plaintiffs have sufficiently alleged that Defendants violated Plaintiffs' due process rights by withholding material exculpatory evidence in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963).

Plaintiffs' allegations of evidence fabrication do not state a cognizable due process claim under well established Seventh Circuit law. When a plaintiff alleges that he suffered a "deprivation of liberty from prosecution and a contrived conviction . . . deliberately obtained from the use of false evidence, his claim is, in essence, one for malicious prosecution, rather than a due process violation." *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003). "The existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001). Plaintiffs "cannot invoke the substantive due process clause where state laws provide an adequate postdeprivation remedy for the complained-of conduct." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010). The existence of a common law tort for malicious prosecution in Illinois, therefore, forecloses Plaintiffs from bringing their allegations of evidence fabrication as due process claims; instead, Plaintiffs must bring them pursuant to state law, which they have appropriately done in Count VI of their complaints.

The Court is not persuaded by Plaintiffs' argument that the Seventh Circuit's decision in *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), repudiates well-established law in this

circuit and creates a stand-alone § 1983 due process claim for evidence fabrication. Two years prior to *Whitlock*, the Seventh Circuit made clear in *Fox* that a plaintiff's attempt to bring an evidence fabrication claim under the due process clause was an improper attempt at "shoe-horning into the more general protections of the Fourteenth Amendment," rather than bringing a state law malicious prosecution claim, as is required. *Fox*, 600 F.3d at 841 (citing *Brooks v. City of* Chicago, 564 F.3d 830, 833 (7th Cir. 2009), and *McCann*, 337 F.3d at 786). *Whitlock* merely held that a prosecutor who fabricates evidence in the investigatory stage of a prosecution may not claim qualified immunity, because his actions violated the defendant's due process rights. *Whitlock*, 682 F.3d at 580. Here, Plaintiffs Saunders, Thames, and Richardson's fabrication allegations may state due process *violations*, but those allegations must be brought as state law malicious prosecution *claims*, rather than as generalized stand-alone due process claims, given the availability under Illinois law of a tort claim for malicious prosecution. See *Fox*, 600 F.3d 841; see also *Julian v. Hanna*, 732 F.3d 842, 845-46(7th Cir. 2013) (noting that malicious prosecution claims are often grounded in the Fourteenth Amendment, but that a federal malicious prosecution claim is not actionable under § 1983 if there is an adequate state remedy). Accordingly, the Court dismisses Plaintiffs' due process fair trial claims that stem from allegations of evidence fabrication.

2.    *Brady Claims*

Nevertheless, Plaintiffs do state, and can pursue, a distinct due process claim stemming from their *Brady* allegations. *Newsome*, 256 F.3d at 752. The Seventh Circuit has held that allegations that officers created false evidence – including creating false written reports, tampering with physical evidence, and inducing witnesses to falsely identify a defendant as the perpetrator of a crime – state a cognizable *Brady* claim if the evidence is withheld from a

18

criminal defendant. *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013); *Manning v. Miller*, 355 F.3d 1028, 1033 (7th Cir. 2004). Even *Newsome*, a case on which Defendants correctly rely as support for the dismissal of Plaintiffs' evidence fabrication due process claims, suggested that plaintiffs in that case could have framed their allegations that police encouraged witnesses to pick them out of a line-up as a *Brady* claim. See *Manning*, 355 F.3d at 1032 (citing *Newsome*, 256 F.3d at 751-52).

Here, Plaintiffs' allegations – that Defendants fabricated false reports, concocted a mop and shovel purportedly used in the commission of the crime, and coerced witnesses to identify Plaintiffs as perpetrators of the crime – are strikingly similar to those in *Manning* and *Engel*. Moreover, Saunders, Thames, and Richardson allege more than just evidence fabrication, claiming also that Defendants withheld exculpatory statements made by the other defendants. The Court concludes that all of this evidence was material and exculpatory, and allegations of its withholding state a due process violation pursuant to *Brady v. Maryland*.

The Court is not persuaded by Defendant's citations to *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2004), *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026-27 (7th Cir. 2006), or *Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007). *Gauger* and *Sornberger* simply held that a police officer's failure to disclose defendant's own exculpatory statements and the coercive circumstances under which the defendant confessed did not violate *Brady's* mandate, because the defendant already knew of this evidence. *Gauger*, 349 F.3d at 360; *Sornberger*, 434 F.3d at 1029. *Harris* did not deal with a claim of evidence fabrication at all. There, officers withheld evidence that exculpated the defendant of a different crime, of which he was not even charged, and lied to prosecutors when asked about defendant's affiliation with a known criminal. *Harris*, 486 F.3d at 1015-17. The Court found the first allegation not to be materially exculpatory of the

crime with which the defendant was charged and the latter to be outside the purview of *Brady* entirely, since no exculpatory evidence was withheld. *Id.*

Nor is the Court persuaded by Defendants' argument, relying on *Carvajal v. Dominguez*, 542 F.3d 561 (7th Cir. 2007), that *Brady* was not violated because Plaintiffs could have obtained the withheld information on their own with reasonable diligence. The Court does not believe that *Brady* requires a criminal defendant to interview police officers to determine if physical evidence purportedly used in the commission of a crime was actually uncovered or if it was instead fabricated by the officers. Nor is the Court convinced that *Brady* requires a defendant to locate and interview government witnesses to determine the veracity of incriminating statements contained in the officers' reports, particularly when those witnesses are incarcerated like the co-defendants in this case.

Finally, the Court disagrees with Defendants' contention that they were exempt from the clear mandate of *Brady* because Thames pleaded guilty. *McCann*, a case that Defendants cite numerous times, makes this explicit: "it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters a guilty plea." *McCann*, 337 F.3d at 788. Here, Plaintiffs Saunders, Thames, and Richardson have alleged cognizable *Brady* claims related to the fabrication and withholding of material exculpatory evidence by Defendant Officers and ASAs. Accordingly, Defendants' motions to dismiss are denied with respect to the *Brady* allegations in Count II of Plaintiffs' complaints.

3.    *ASAs' Immunity Claims*

Assistant State's Attorneys Johnson and Valentini insist that they are entitled to either absolute or qualified immunity, because they took no part in the investigatory phase of the case against Saunders (who has named both ASAs as defendants) or Thames (who has named only ASA Johnson as a defendant). (Richardson is suing neither ASA). Although the cases on which they rely establish that prosecutors are shielded from liability for acts undertaken during the judicial phase of the criminal process, see *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003), the Court concludes that whether or not ASAs Johnson and Valentini were acting in an investigatory capacity cannot be determined on the basis of the pleadings alone, which precludes an immunity determination at this time. "Where a litigant presents a due process claim – *Brady*, *Giglio*, or otherwise – the question of immunity turns on the capacity or function that the prosecutor was performing at the time of the alleged wrongful conduct." *Whitlock*, 682 F.3d at 579-80. The Seventh Circuit made clear in *Lewis v. Mills*, 677 F.3d 324, 331 (7th Cir. 2012), that "a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity."

With respect to qualified immunity, the Seventh Circuit was explicit in *Whitlock* that "a prosecutor whose investigatory conduct is the proximate cause of the due process violation that occurs when the false evidence is introduced at trial is held to the same standard of liability as a police officer who does the same thing." *Whitlock*, 682 F.3d at 583. Viewing the facts in the light most favorable to the Plaintiffs, both Saunders and Thames allege that the ASAs acted in concert with Defendant Officers in their investigation and interrogation of the Plaintiffs, in coercing and fabricating Plaintiffs' confessions, and in coercing and fabricating incriminatory

statements from other witnesses.  See Saunders' Complaint at ¶ 38, 42, 55, 58, 62, 68, 69, 71; Thames' Complaint at ¶ 27, 28, 30.  As such, ASAs Johnson and Valentini are not entitled to immunity at this time with respect to Plaintiffs' *Brady* allegations.

### C.    Failure to Intervene and Conspiracy to Deprive Constitutional Rights

#### 1.    City Defendants

The City Defendants move to dismiss Plaintiffs' claims of Failure to Intervene (Count III) and Conspiracy to Deprive Constitutional Rights (Count IV) on the sole ground that Plaintiffs have not pleaded an underlying constitutional violation.  Because Plaintiffs have stated a cognizable *Brady* claim, Defendant's motion to dismiss is denied with respect to these counts.

#### 2.    ASA Defendants

The ASA Defendants contend that Count III must be dismissed, because they are immune from liability, or alternatively, because the Seventh Circuit only recognizes a failure to intervene claim against police officers, as distinct from prosecutors.  As discussed *supra*, the ASAs are not entitled to immunity for acts committed in an investigatory capacity.  Accordingly, Defendant ASAs could be liable for acts committed during their alleged interrogation and coercion of the Plaintiffs.

The Seventh Circuit recognizes that a state actor's failure to intervene may render him culpable under § 1983.  *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).  *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972), the seminal Seventh Circuit case on the subject, noted that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his person in his presence or otherwise within his knowledge."  As support for their contention that failure to intervene liability does not extend to prosecutors, the ASA Defendants cite to a few Northern District of Illinois cases that declined to recognize such a claim.  See *Gordon v. Devine*, No. 08-

CV-377, 2008 WL 4594354 at *17 (N.D. Ill. October 14, 2008) (declining to recognize failure to intervene claim against prosecutors who failed to intervene in the unlawful conduct of other State's Attorneys); *Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n.6 (N.D. Ill. 2009) (declining to recognize prosecutor's duty to intervene, because prosecutors do not have police powers or command of police operations); *Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 773 (N.D. Ill. 2012) (finding the reasoning in *Gordon* and *Andrews* persuasive). The Court, however, is disinclined to foreclose the possibility of extending failure to intervene liability to prosecutors in this case, in large part, because the Seventh Circuit's recent decision in *Whitlock* suggests that prosecutors and police are subject to the same duties when acting in an investigatory capacity. *Whitlock*, 682 F.3d at 580 ("The only question is whether a prosecutor who is acting in an investigatory capacity is subject to rules that are any different. We think not."). Although the ASA Defendants contend that the Northern District of Illinois has never recognized a failure to intervene claim against a prosecutor, Judge Leinenweber recently denied a motion to dismiss such a claim, where, as here, prosecutors were alleged to have been essentially exercising police powers and, thus, would have had a "realistic opportunity to step forward and prevent a fellow officer from violating plaintiff's right[s]." *Rivera v. Lake County*, --- F. Supp. 2d ---, 2013 WL 5408840 at *4 (N.D. Ill. Sept. 26, 2013) (quoting *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)). Accordingly, the ASA Defendants' motions to dismiss are denied as to Count III.

With respect to Conspiracy to Deprive Constitutional Rights (Count IV), the ASA Defendants' motions to dismiss are denied, because Plaintiffs have stated claims for *Brady* violations against both ASA Johnson and Valentini, neither of whom is entitled to immunity protection at this juncture, as discussed *supra*.

### D.     *Monell*

The City moves to dismiss Plaintiffs' *Monell* claim (Count VI) on the sole ground that Plaintiffs have not pleaded an underlying Constitutional violation.  Because Plaintiffs have stated a cognizable *Brady* claim, the City's motion to dismiss is denied with respect to Count VI.

### E.     **Supervisory Liability**

Although the City Defendants argue that § 1983 does not authorize claims for supervisory liability, Plaintiffs point to several Seventh Circuit cases that plainly demonstrate that it does.  *Matthews v. City of St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012); *Backes v. Village of Peoria Heights, IL*, 662 F.3d 866, 869-70 (7th Cir. 2011); *Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001).  A defendant "need not participate directly in the deprivation for liability to follow under § 1983."  *Backes*, 662 F.3d at 869-70.   To be held personally liable for the acts of subordinates, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate indifference."  *Id.* at 870; *Chavez*, 251 F.3d at 651; *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).

Plaintiffs Saunders, Thames, and Richardson argue that supervisory defendants, including but not limited to Defendants Tudier and Cassidy, are subject to supervisory liability for failing to adequately train and supervise their subordinates.  Plaintiffs allege that "Defendant Cassidy and other Chicago Police Department personnel" were assigned to investigate Nina Glover's murder, which they began doing at the crime scene on the day that her body was discovered.  Saunders Complaint at ¶ 25; Thames Complaint at ¶ 17; Richardson Complaint at ¶ 20.  Plaintiffs further allege that Detective Cassidy, acting in concert with other officers, interviewed and coerced witnesses, falsified reports, and lied to prosecutors about the investigation.

Saunders Complaint at ¶ 25, 58, 65, 69; Thames Complaint at ¶ 26-30, 32-34, 37; Richardson Complaint at ¶ 22, 39, 50, 67, 71. Plaintiffs, however, do not allege any facts that suggest that Detective Cassidy was acting in a supervisory role in the investigation or as a superior to any of the other officers involved. They simply allege that Detective Cassidy and others were assigned to investigate the case and that he engaged in wrongdoing alongside them. From this, the Court cannot reasonably infer that Detective Cassidy was a supervisor.

Likewise, Plaintiffs have failed to allege any facts that suggest that Sergeant Tudier's role in the Plaintiffs' investigation and prosecution was supervisory in nature. It is impossible to view the facts in the light most favorable to Plaintiffs, because they do not make any substantive factual allegation about Sergeant Tudier, outside of their allegations against all "Defendant Officers." Even if the Court were to assume, based purely on his title, that Sergeant Tudier supervised other officers, Plaintiffs allege nothing that suggests that he knew about the alleged conduct and facilitated, approved, condoned, or turned a blind eye towards it. Without more, Plaintiffs' general and conclusory statements that Sergeant Tudier "failed to adequately train and supervise the individual Defendant Officers," was "personally involved in the case," and "knew . . . or should have known of [his] subordinates' unconstitutional actions" do not constitute well-plead allegations that raise the possibility of relief above the speculative level. Saunders Complaint at ¶ 141-42; Thames Amended Complaint at ¶ 99-100; Richardson Complaint at ¶ 131-32. Because Plaintiffs have failed to state a claim for supervisory liability, the City Defendants' motion is granted with respect to Count V.

F.      **State Law Claims for Malicious Prosecution, Intentional Infliction of Emotional Distress, Civil Conspiracy, *Respondeat Superior*, and Indemnification**

1.      *Malicious Prosecution, Intentional Infliction of Emotional Distress, and Civil Conspiracy Claims Against City Defendants*

City Defendants argue that Plaintiffs' state law claims for malicious prosecution and intentional infliction of emotional distress ("IIED") should be dismissed, because "the bulk" of the factual allegations that support the claims are directed against "Defendant Officers" collectively, rather than against specific individual Defendants. City Def. Resp. at 22. City Defendants contend that a malicious prosecution or IIED claim leveled simultaneously at nine officers is facially implausible; all nine officers could not possibly have harmed Plaintiffs, they argue. Despite this contention, the Court finds that it is more than conceivable that these officers – each involved in the investigation of the same murder – acted in concert as they fabricated evidence, interrogated suspects, and leveraged the boys' coerced statements against one another. Indeed, Plaintiffs also allege a conspiracy. Moreover, Plaintiffs allege separate individual misconduct as to almost every named officer, bolstering their claims that all Defendant Officers acted together in maliciously prosecuting Plaintiffs and inflicting them with emotional distress. Saunders Complaint at ¶ 35, 50, 52, 54, 58, 62, 63, 65, 69; Thames Amended Complaint at ¶ 21, 25-30, 32-34, 37-39; Richardson Complaint at ¶ 32, 39, 44, 49, 50, 67, 71. Accordingly, the City Defendants' motion to dismiss Plaintiffs' state law claims of malicious prosecution (Count VII) and intentional infliction of emotional distress (Count VIII) is denied as to all Defendant Officers.

The City Defendants argue that if either Plaintiffs' malicious prosecution or intentional infliction of emotional distress claim is well-pleaded, their civil conspiracy claims must be dismissed as duplicative. The Illinois Supreme Court has explained, however, that "dismissal of

[a] conspiracy count as duplicative of other theories of recovery alleged in the complaint is, at [the pleading stage] premature. A plaintiff may plead and prove multiple causes of action, though it may obtain only one recovery for an injury." *Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998). "Here, the conspiracy count simply represents an alternative theory of liability." *Id.* As such, the City Defendants' motion to dismiss Count IX is denied.

### 2. Intentional Infliction of Emotional Distress and Civil Conspiracy Claims Against ASA Defendants

Both ASA Defendants contend that they are immune from liability for IIED and civil conspiracy. ASA Johnson argues, in the alternative, that Plaintiffs have failed to state a claim for IIED against him. If Plaintiffs' IIED claim is dismissed, both ASA Defendants argue that Plaintiffs' civil conspiracy claim must also be dismissed, as it is derivative of their IIED claim.

As ASA Johnson points out, "Illinois and federal doctrines of prosecutorial immunity are coterminous," such that a determination as to a prosecutor's immunity under federal law would also govern a determination as to his entitlement to immunity for state law claims. *Kitchen v. Burge*, 781 F. Supp. 2d 721, 737 (N.D. Ill. 2011); see also *Andrews v. Burge*, 660 F. Supp. 2d 868, 879 (N.D. Ill. 2009). As discussed *supra*, whether the ASAs are entitled to immunity turns on the function they were performing at the time of the allegedly unconstitutional conduct. See *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) ("In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a 'functional approach, which looks to the nature of the function performed, not the identity of the actor who performed it.'"). "A prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime" is not protected by absolute immunity. *Id.* at 275. To determine if qualified immunity is available, two questions must be addressed: "whether the plaintiff has alleged a deprivation of a

constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Whitlock*, 682 F.3d at 580. The Seventh Circuit has said there "is no disputing" that fabricating evidence violates clearly established constitutional rights. *Id.* (quoting *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). "[T]he whole point of the Supreme Court's ruling in *Buckley* is that the police and investigating prosecutors are subject to the same constraints." *Id.* at 581. Plaintiffs' allegations that ASA Defendants worked in an investigatory capacity alongside detectives as they interrogated witnesses and potential suspects and fabricated witness statements, therefore, compels the denial of prosecutorial qualified immunity, to the extent that Plaintiffs' claims arise out of the ASA Defendants' investigative conduct.

The Court is likewise not persuaded by ASA Defendants' contention that sovereign immunity shields them from liability in federal court. ASA Defendants argue that Plaintiffs' claims are actually allegations against the state of Illinois (and only nominally claims against ASAs Johnson and Valentini). Johnson MTD Saunders Comp. at 6; Valentini Reply to Saunders Opp. at 5. Sovereign immunity precludes a lawsuit anywhere but in the Illinois Court of Claims when (1) there are no allegations that an employee of the state acted beyond the scope of his authority through wrongful acts, (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment, and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the state. *Healy v. Vaupel*, 133 Ill.2d 295, 309 (Ill. 1990). However, "sovereign immunity affords no protection . . . when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of authority, and in those instances an action may be brought in circuit court." *Cannon v. Burge*, No. 05-cv-2192, 2006 WL 273544, at *17 (N.D. Ill. Feb. 2,

2006) (quoting *Senn Park Nursing Ctr. v. Miller*, 104 Ill.2d 169, 188 (Ill. 1984)).  Here, as in *Cannon*, Plaintiffs have alleged that both prosecutors acted outside of state law and in violation of the Constitution during their direct participation in the interrogation and coercion of witnesses, including the Plaintiffs.  As such, ASA Defendants' are not entitled to sovereign immunity for IIED or civil conspiracy.

Finally, ASA Johnson contends that Saunders has failed to state an IIED claim against him, because Saunders makes no allegation that ASA Johnson took part in his interrogation.  Although it is true that Saunders does not allege that ASA Johnson interrogated him directly, he does allege that ASA Johnson engaged in extreme or outrageous conduct that intentionally or recklessly caused him severe emotional distress.  Specifically, Saunders alleges that ASA Johnson coerced and knowingly took a fabricated statement from Jerry Fincher (Saunders Comp. at ¶ 38), knew the statement served as the sole impetus for falsely arresting Saunders (*id.* at ¶ 42), yet worked in concert with the Defendant Officers to coerce Saunders to confess (*id.* at ¶ 43), then worked in conjunction with ASA Valentini who fabricated a written statement implicating Saunders in the murder (*id.* at ¶ 55), participated in the interrogation of other suspects (*id.* at ¶ 68-69), and suppressed any related exculpatory evidence (*id.* at ¶ 73) to secure a conviction.  The Court concludes that these allegations of extreme and intentional or reckless conduct towards Saunders state a claim against ASA Johnson for IIED.

Because Plaintiffs have stated claims for IIED, their derivative civil conspiracy claim is well-pleaded.  Accordingly, ASA Defendants' motions are denied with respect to Counts XIII and IX.

3.      *Respondeat Superior* and Indemnification

The City argues that Plaintiffs' claims for *respondeat superior* and indemnification cannot survive if their other state law claims are dismissed. But because Plaintiffs have stated claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy, the City's motion to dismiss is denied with respect to Counts X and XI.

## IV.    Conclusion

For the reasons set forth above, in *Saunders v. City of Chicago, et al.* (No. 12-cv-9158), the Court grants in part Defendants' motions to dismiss [51, 60, and 71]. Count I is dismissed as time-barred as to all Defendants. Count II is dismissed as to all Defendants, in so far as Plaintiff alleges a violation of a generalized due process right to a fair trial; however, Defendants' motion is denied as to Count II, with respect to Plaintiff's *Brady* claims. Defendants' motions are denied as to Counts III and IV. Count V is dismissed for failure to state a claim for supervisory liability. Defendants' motions are denied as to Counts VI through XI.

In *Thames v. City of Chicago, et al.* (No. 12-cv-9170), the Court grants in part Defendants' motions to dismiss [35 and 43]. Count I is dismissed as time-barred as to all Defendants. Count II is dismissed as to all Defendants, in so far as Plaintiff alleges a violation of a generalized due process right to a fair trial; however, Defendants' motion is denied as to Count II, with respect to Plaintiff's *Brady* claims. Defendants' motions are denied as to Counts III and IV. Count V is dismissed for failure to state a claim for supervisory liability. Defendants' motions are denied as to Counts VI through XI.

In *Richardson v. City of Chicago, et al.* (No. 12-cv-9184), the Court grants in part Defendants' motions to dismiss [44]. Count I is dismissed as time-barred as to all Defendants. Count II is dismissed as to all Defendants, in so far as Plaintiff alleges a violation of a

generalized due process right to a fair trial; however, Defendants' motion is denied as to Count II, with respect to Plaintiff's *Brady* claims. Defendants' motions are denied as to Counts III and IV. Count V is dismissed for failure to state a claim for supervisory liability. Defendants' motions are denied as to Counts VI through XI.

The dismissals of Plaintiffs' claims are without prejudice to repleading within 21 days if Plaintiffs believe that they can cure any of the deficiencies identified above.

Dated: November 13, 2013

_____
Robert M. Dow, Jr.
United States District Judge